IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARTIN JAWORSKI,

      Petitioner,

v.                            Civil Action No. 5:06CV157
                                        (STAMP)
DOMINIC A. GUTIERREZ,

      Respondent.


## MEMORANDUM OPINION AND ORDER
## GRANTING AS FRAMED APPLICATION FOR HABEAS CORPUS

On December 14, 2006, the petitioner, Martin Jaworski, appearing pro se,[1] filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking an order directing the Bureau of Prisons ("BOP") to transfer him to a Community Corrections Center ("CCC")[2] for the last six months of his term of imprisonment. This Court referred the application to United States Magistrate Judge James E. Seibert for an initial review and submission of proposed findings of fact and recommendation pursuant to Local Rule of Prisoner Litigation Procedure 83.09.

On December 14, 2006, the petitioner paid the required $5.00 filing fee. By order, entered on December 27, 2006, the Court

_____

[1]"Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1237 (7th ed. 1999).

[2]The BOP now refers to Community Corrections Centers as Residential Release Centers; for purposes of clarity and consistency with the terms used in documents the parties have filed with this Court, this order will continue to refer to the facilities as Community Corrections Centers ("CCCs").

directed the respondent to answer the petition. On January 26, 2007, the respondent filed a response to the order to show cause and memorandum in support of motion to dismiss. Attached to the response, the respondent filed two exhibits. The exhibits include a declaration of Clarissa Greene with a "SENTRY computer-generated Public Information Inmate Data" regarding the petitioner and a declaration of Lori Lindsay. On January 29, 2007, the respondent filed an amended response to the order to show cause and memorandum in support of motion to dismiss. On February 13, 2007, the petitioner filed a reply brief.

On February 14, 2007, the magistrate judge entered a report finding that the issues the petitioner raised were not ripe for adjudication and recommending that the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 be denied and dismissed without prejudice. The magistrate judge also informed the parties that if they objected to any portion of this report, they must file written objections within ten days after being served with copies of this report. On March 2, 2007, the petitioner filed objections to this report.

Pursuant to 28 U.S.C. § 636(b)(1), this Court reviews de novo those portions of the magistrate judge's findings to which an objection is made. But for intervening events, this Court would affirm the magistrate judge's determination that the application should be dismissed because the issues are not ripe for review. However, on July 30, 2007, the petitioner filed the BOP's official

2

referral form for his placement in CCC. (Doc. No. 10, Attach. 1.)
That form indicates that the petitioner has been recommended for
CCC placement on October 26, 2007. Therefore, the issues raised in
the petitioner's application for a writ of habeas corpus are now
ripe for review. Because time is of the essence, this Court will
address the merits of the application without referring this matter
to the magistrate judge for further recommendation.

## I. Facts

On November 17, 2004, the petitioner was sentenced in the
United States District Court for the Northern District of Ohio to
a 43-month term of incarceration followed by a two-year term of
supervised release for mail fraud in violation of 18 U.S.C. § 1341.
The petitioner was designated to the Federal Correctional
Institution in Morgantown, West Virginia ("FCI Morgantown") on
January 4, 2005. (Doc. No. 5-3.) If this Court assumes that good
time credit will be given, the petitioner's projected release date
is February 16, 2008.

On May 7, 2007, after evaluating the petitioner's eligibility
for CCC placement, the BOP recommended the petitioner for transfer
to such a facility. (Doc. No. 10.) The BOP's recommended transfer
date, October 26, 2007, marks the final 113 days of the
petitioner's sentence served, and accounts for the last ten percent
of the time served on his sentence. (Doc. No. 10, Attach. 1.)

## II.  Contentions of the Parties

The petitioner raises the following ground in his application for writ of habeas corpus:

(1)  The BOP's policy of limiting inmates' CCC placements to the last ten percent of their terms of imprisonment has been ruled unconstitutional.

The Government contends that the petition should be dismissed because:

(1)  The petitioner has failed to exhaust his administrative remedies;

(2)  This Court lacks subject matter jurisdiction under 28 U.S.C. § 2241;

(3)  The issues the petitioner raises are not yet ripe for adjudication;

(4)  The 2005 Rules are a lawful exercise of the BOP's broad statutory discretion to designate an inmate's place of imprisonment;

(5)  The BOP properly exercised its discretion by categorically limiting placement in CCCs to the final ten percent of an inmate's sentence served, not to exceed six months.

The United States District Court for the Northern District of West Virginia, in an unpublished opinion by Judge John Preston Bailey, Murdock v. Gutierrez, No. 3:06-CV-105, 2007 WL 2193592 (N.D. W. Va. July 24, 2007), addressed the same issues as the parties raise in this case, with the exception of the

jurisdictional issue, which was not raised in <u>Murdock</u>. In <u>Murdock</u>, the petitioner was sentenced to 27-months of imprisonment. The BOP recommended that the petitioner be transferred to a CCC for only the last 46 days of his confinement period. This period represented the final ten percent of the time served on the petitioner's sentence. The petitioner challenged the recommended time for CCC placement in a petition for writ of habeas corpus, arguing that the BOP's categorical policy of transferring prisoners to a CCC for the last ten percent of their prison terms was unconstitutional. The court determined that the BOP's regulations governing CCC placements contravened congressional intent regarding prisoner placement, as expressed in 18 U.S.C. § 3621(b), and were therefore invalid to the extent that the regulations limited placement of the petitioner in a CCC to the lesser of ten percent or six months of his sentence without considering the factors Congress enumerated in the statute. Because the issues in <u>Murdock</u> are identical to those in this case — with the already noted exception of the respondent's jurisdictional challenge — this order will closely follow the analysis set forth in <u>Murdock</u>.

### III. <u>Historical Background</u>

The BOP's practice prior to December 2002 was to place inmates in a CCC for six months, without considering the full duration of an inmate's sentence. <u>See</u> BOP Program Statement 7310.04. On December 13, 2002, the Office of Legal Counsel for the Department of Justice ("OLC") determined that the relevant statute, 28 U.S.C.

§ 3624(c), limited an inmate's placement in a CCC to the lesser of six months or ten percent of the inmate's full sentence and that the BOP's policy was therefore inconsistent with the statutory requirements. Section 3624(c) provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

28 U.S.C. § 3624(c).

Based upon the OLC's interpretation of the statute, the BOP, in December 2002, adopted a revised policy for placing prisoners in CCCs. Under the 2002 policy, inmates were eligible for CCC placement for the lesser of the last six months or ten percent of their sentence; subsequently, numerous petitioners filed challenges to the 2002 policy, petitioning the courts for writs of habeas corpus. The United States Courts of Appeals for the First and Eighth Circuits, as well as many federal district courts,[3] held the BOP's policy invalid as contrary to the plain meaning of 18 U.S.C. § 3621(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available

---

[3]See Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Cato v. Menifee, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003 (collecting cases).

6

penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering —

(1)  the resources of the facility contemplated;

(2)  the nature and circumstances of the offense;

(3)  the history and characteristics of the prisoner;

(4)  any statement by the court that imposed the sentence —

  (A)  concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

  (B)  recommending a type of penal or correctional facility as appropriate; and

(5)  any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

The BOP responded to these decisions in 2005 by adopting revised regulations to govern inmates' placements in CCCs ("2005 Rules"). Engaging in what it termed a "categorical exercise of discretion," the BOP stated that it would henceforth "designate inmates to [CCC] confinement . . . during the last ten percent of the prison sentence being served not to exceed six months."  28 C.F.R. § 570.20-21. Under its new regulations, however, the BOP expressly prohibits placing prisoners in CCCs before the pre-release phase of imprisonment and provides:

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the **last ten percent** of the **prison sentence** being **served**, not to exceed six months.

(b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program) . . . .

28 C.F.R. § 570.21 (emphasis added).

The 2005 regulation is the BOP policy prompting the petitioner's habeas corpus challenge in this case.

## IV. <u>Analysis</u>

A. <u>Exhaustion</u>

Federal inmates must exhaust their administrative remedies before filing a § 2241 petition for a writ of habeas corpus. <u>See e.g.</u> <u>Martinez v. Roberts</u>, 804 F.2d 570 (9th Cir. 1996); <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757 (3d Cir. 1996); <u>Colton v. Ashcroft</u>, 299 F. Supp. 2d 681 (E.D. Ky. 2004). As several courts have observed, however, requiring inmates to use the administrative process to challenge the BOP's policy regarding CCC placement would be futile. <u>See e.g.</u> <u>Fagiolo v. Smith</u>, 326 F. Supp. 2d 589, 590 (M.D. Pa. 2004) ("exhaustion would be futile because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. § 3624(c)"); <u>Zucker v. Meinfee</u>, 2004 WL 102779 *4 (S.D.N.Y. Jan. 21, 2004) ("given the subordinate relation of the highest level of administrative appeal to the source of the

interpretation at issue in this case," the petitioner's failure to exhaust was excused as being futile).

Additionally, the exhaustion requirement in habeas corpus actions arising under § 2241 — to the extent that exhaustion has been applied to such challenges — has no statutory mandate, but rather is judicially imposed. Consequently, a court may, in appropriate circumstances, exercise its discretion to waive the exhaustion requirement. See LaRue v. Adams, 2006 WL 1674487 *8 (S.D. W. Va. June 12, 2006) (recognizing that several federal circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the United States Court of Appeals for the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

In this case, the parties do not dispute that the petitioner has failed to exhaust his administrative remedies prior to filing suit in this Court. The petitioner admits that he has not pursued administrative remedies, alleging that doing so would be futile (Pet'r's Reply Br. at 3.) This Court agrees that exhaustion would be futile in this instance "because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. § 3624(c)." Fagiolo v. Smith, 326 F. Supp. 2d at 590. Accordingly, this Court exercises its discretion to waive the

exhaustion requirement and proceeds to a determination on the merits.

B. <u>Whether Court Has Subject Matter Jurisdiction Under 28 U.S.C. § 2241</u>

The respondent argues that this Court lacks habeas jurisdiction to consider this petition because the petitioner is challenging the "conditions" of his confinement, rather than the fact or duration of his sentence. The respondent contends that the United States Court of Appeals for the Fourth Circuit has squarely addressed the proper application of both a petition for writ of habeas corpus and a civil rights action. The respondent contends that to determine whether a claim is cognizable under habeas corpus or under a civil rights action, a court must review whether the challenge is to the fact or duration of the prisoner's confinement, or to the conditions of the prisoner's confinement. <u>Todd v. Baskerville</u>, 712 F.2d 70, 73 (4th Cir. 1983).

The respondent argues the petitioner complains about the conditions of his confinement, specifically, where he is confined. The petitioner is a federal prisoner challenging the BOP's choice of prisons. He does not, in the opinion of the respondent, challenge the fact or duration of his federal custody, but rather his conditions of confinement. Therefore, the respondent believes, the petitioner's claim is properly raised under <u>Bivens v. Six</u>

<u>Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), and not in a habeas corpus proceeding.

As noted by the United States Court of Appeals for the Third Circuit, in addressing this same claim, "resolution of this issue is far from clear, for there are credible arguments on both sides of this complicated matter." <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235, 241 (3d Cir. 2005). However, upon review of a number of circuit and district court decisions, this Court is persuaded that § 2241 is the proper mechanism for the petitioner to use in this case.

Addressing a claim that arose when the BOP threatened to move a prisoner from a community treatment center to a "more secure facility," the United States Court of Appeals for the Sixth Circuit found § 2241 the appropriate remedy because "the manner in which the sentence was being 'executed'" was challenged. <u>See</u> <u>United States v. Jalili</u>, 925 F.2d 889, 893 (6th Cir. 1991). Similarly, the United States Court of Appeals for the Tenth Circuit found a petition under § 2241 proper where a prisoner challenged his transfer from a Wyoming state-operated prison to a private Texas facility. <u>See</u> <u>Montez v. McKinna</u>, 208 F.3d 862, 865 (10th Cir. 2000) ("Such an attack, focusing on where his sentence will be served, seems to fit better under the rubric of § 2241."). Additionally, a number of federal district courts analyzing the

2005 BOP regulations or the previous 2002 policy have found that a § 2241 petition is the proper vehicle for relief.[4]

The criteria for determining CCC placement are instrumental in determining how a sentence will be executed. CCCs and other similar facilities, unlike standard forms of incarceration, are part of the correctional process that focuses on reintegrating an inmate into society. The relevant statute specifically provides that an inmate should be placed in a CCC or similar institution at the end of a prison sentence to "afford the prisoner a reasonable opportunity to adjust to and prepare for . . . re-entry into the community." 18 U.S.C. § 3624. CCCs therefore satisfy different goals from other types of confinement. CCC pre-release programs often include an employment component under which an inmate may leave the prison facility on a daily basis to work in the community. In addition, inmates may be eligible for weekend passes, or furloughs. See <u>United States v. Hillstron</u>, 988 F.2d 448

---

[4]<u>See e.g.</u> <u>Pimental v. Gonzales</u>, 367 F. Supp. 2d 365, 369-71 (E.D.N.Y. 2005); <u>United States v. Paige</u>, 369 F. Supp. 2d 1257, 1259 (D. Mont. 2005) ("federal criminal defendant seeking to challenge the manner, location, or conditions of a sentence's execution must proceed with a petition for habeas corpus, brought pursuant to § 2241 . . ."); <u>Franceski v. Bureau of Prisons</u>, No. 04 Civ. 8667, 2005 WL 821703, at *2, 2005 U.S. Dist. LEXIS 5961, at **6-13 (S.D.N.Y. Apr. 8, 2005); <u>Norrito v. DeRosa</u>, No. 04-610, 2004 U.S. Dist. LEXIS 28789 at *1 n.1 (D.N.J. Aug. 11, 2004); <u>Grimaldi v. Menifee</u>, No. 04 Civ. 1340, 2004 WL 912099, at * 3, 2004 U.S. Dist. LEXIS 912099, at *3, 2004 U.S. Dist. LEXIS 7455, at **6-8 (S.D.N.Y. Apr. 29, 2004); <u>Zuker v. Menifee</u>, No. 03 Civ. 10077, 2004 WL 102779, at *3, 2004 U.S. Dist. LEXIS 724, at **8-11 (S.D.N.Y. Jan. 21 2004) (collecting cases).

(3d Cir. 1993); see also United States v. Latimer 991 F.2d 1509, 1513 (9th Cir. 1993) (emphasizing that community confinement is "qualitatively different" from confinement in a traditional prison).

Given these considerations, and the weight of authority from other circuits, especially the Sixth Circuit's decision in Jalili, this Court concludes that the petitioner's challenge to the BOP regulations is a proper challenge to the "execution" of his sentence. Therefore, this Court has subject matter jurisdiction under 28 U.S.C. § 2241.

C.   Whether Petition Raises Issues Which Are Ripe for Adjudication

According to the United States Supreme Court, the ripeness doctrine, under which a court may refuse to exercise its jurisdiction, originates from both constitutional limitations and prudential considerations. Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807 (2003). "The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." Metzenbaum v. Fed. Energy Regulatory Comm'n, 675 F.2d 1282, 1289–1290 (C.A.D.C. 1982) (citations omitted). The basic rationale of ripeness is:

> to prevent the courts, through avoidance of premature
> adjudication, from entangling themselves in abstract
> disagreements over administrative policies, and also to
> protect the agencies from judicial interference until an
> administrative decision has been formalized and its
> effects felt in a concrete way by the challenging

13

parties.  The problem is best seen in a two fold aspect,
requiring us to evaluate both the fitness of the issues
for judicial decision and the hardship to the parties of
withholding court consideration.

Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967)

(overruled on other grounds).

At the time the petitioner initiated this case, the BOP had
not made a formal recommendation regarding the petitioner's
placement in a CCC; however, the BOP has since made such
recommendation.  (Doc. No. 10, Attach. 1.)  Accordingly, this case
is now ripe for adjudication.

D.     The Constitutionality and Validity of the 2005 Rules

       1.     Petitioner's Contentions

The petitioner contends that his counselor informed him that
BOP policy prohibited his transfer to a CCC until he had reached
the last 3.7 months of his sentence, which represents the final ten
percent of his sentenced period of confinement.  The petitioner
further alleges that three federal appellate courts — the United
States Courts of Appeals for the Second, Third and Eighth Circuits
— have ruled the current BOP policy to be unconstitutional and that
the BOP is unlawfully denying him placement in a CCC for the final
six months of his sentence.  As relief, the petitioner requests
this Court grant his petition for writ of habeas corpus and order
the BOP to transfer him to a CCC for the last six months of his
sentence.

14

The petitioner claims that the BOP's ten percent policy constitutes a categorical rule limiting the duration of CCC confinement. The petitioner states that the plain meaning of 18 U.S.C. § 3621(b) does not permit such a categorical rule and that the Second, Third and Eighth Circuits have found the rule unlawful because it both contravenes Congress's clearly expressed intent and violates the Ex Post Facto Clause of the United States Constitution.[5] Finally, the petitioner maintains that although the BOP has discretion under § 3621(b) to make placement determinations, § 3621(b) identifies specific factors which limit that discretion. The petitioner argues that the BOP is therefore prohibited from implementing categorical rules which fail to consider the limits of its discretion.

2. Respondent's Contentions

In response to the Court's show cause order, the respondent maintains that the 2005 Rules are valid as a proper exercise of discretion in its rulemaking power. In support of this claim, the respondent argues that the petitioner's challenge falls within the scope of 18 U.S.C. § 3624(c) rather than 18 U.S.C. § 3621(b) as the petitioner suggests. In addition, the respondent argues that the BOP's statutory construction warrants substantial deference under

---

[5]Although the petitioner asserts that those courts have held that the policy violates the Ex Post Facto Clause, that claim is not accurate. The Second, Third and Eighth Circuits have found examination of petitioners' ex post facto claims either unnecessary — because the writ has been granted on other grounds — or without merit.

the standard set forth in <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 844 (1984).[6]

The respondent also contends that even if § 3621(b) does govern the petitioner's challenge, it does not confer a statutory right of prisoners to CCC placement at any particular time. Moreover, the respondent argues that Congress has granted the BOP virtually unlimited discretion in designating the location of an inmate's confinement.[7] "Given the [BOP's] sweeping authority," the

---

[6]In <u>Chevron</u>, the Supreme Court dictated that courts should presume "that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." <u>See</u> <u>Smiley v. Citibank</u>, 517 U.S. 735, 739 (1996). Therefore, the Court established a two-step test for reviewing an agency's statutory construction. The first step begins with determining "whether Congress has directly spoken to the precise question at issue." <u>Chevron</u> at 842–43. If Congress's intent is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Id.</u> If there is ambiguity in the statute, the court must then determine whether the agency's construction of the statute is reasonable. <u>Id.</u> at 844. The agency's construction of the statute is given "substantial deference," <u>Blum v. Bacon</u>, 457 U.S. 132, 141–142, and will be upheld unless it is "arbitrary, capricious, or manifestly contrary to the statute." <u>Chevron</u> at 844.

[7]In fact, the respondent asserts that this Court has previously held that the 2005 Rules are a lawful exercise of the BOP's broad discretion under § 3621(b) to determine an inmate's place of imprisonment. (Resp. at 13 (citing <u>Goolsby v. Ashcroft</u>, No. 1:04CV145, 2005 WL 1165773 at *3 (N.D. W. Va. Apr. 29, 2005).) However, in <u>Goolsby</u>, the court was addressing whether or not the 2005 Rules violated the <u>Ex Post Facto</u> Clause or the Administrative Procedures Act. The court found that it does neither. In so finding, the court noted that the 2005 Rules appeared to operate within the letter of the statute [§ 3624(c)] and appeared to meet the spirit and intent of that statute. <u>Goolsby</u> at *3. Not at issue at that time was whether the 2005 Rules contradicted the express intent of § 3621(b). Thus, the court did not find that the 2005 Rules were a lawful exercise of the BOP's discretion under § 3621(b), as the respondent has suggested, because that issue was

respondent claims, "its method for making placement determinations is entitled to substantial deference, and inmates such as Petitioner do not have the statutory right under § 3621(b) to require the [BOP] to consider transferring them to a CCC or any other facility at any particular time." (Resp. to Show Cause Order (hereinafter "Resp.") at 17.)

This Court understands the petitioner's claim not as an argument that § 3621(b) requires the BOP to consider him for placement in a CCC, but rather that the BOP may consider him for such placement pursuant to § 3624(c), and in doing so, the BOP must consider the five factors enumerated in § 3621(b). Accordingly, this argument by the respondent is moot, and this Court does not consider it in more detail throughout this order.

The respondent further contends that the United States Supreme Court has upheld the BOP's interpretation that Congress has statutorily granted the BOP the categorical exercise of discretion. (See Resp. at 17 (citing Lopez v. Davis, 532 U.S. 230, 233–34 (2001)).) The respondent further claims that the issue raised in this case bears striking similarity to the one the Supreme Court decided in Lopez and that, by analogy, "[t]he [BOP]'s decision to restrict CCC placements to prisoners serving the final ten percent of their sentences is a lawful categorical exercise of the agency's discretion, just as the categorical exclusion of certain crimes from early release eligibility was lawful in Lopez." (Id. at 19.)

---

not squarely before the court at that time.

The respondent next asserts that the statutory language and legislative history of § 3621(b) demonstrates that Congress did not limit the BOP's discretion merely by listing certain factors to be considered when determining an inmate's assignment to a CCC. In support of this contention, the respondent argues that Congress's use of the word "may" as opposed to "shall" in § 3621(b) clearly confers upon the BOP the discretion, but not the duty, to consider the enumerated factors in its decisionmaking. The respondent also asserts that the legislative history shows that Congress did not intend the enumerated factors to restrict the BOP's exercise of its discretion under § 3621(b). The respondent argues that because Congress intended the enumerated factors in § 3621 to be nonexclusive, they do not limit the BOP in the exercise of its discretion.

The respondent also contends that the BOP did in fact consider the § 3621(b) factors when issuing the 2005 Rules. In support of this claim, the respondent asserts that "[i]n proposing the 2005 Rules, the [BOP] considered the resources of the facility contemplated, . . . when it reasoned that CCC's are 'particularly well suited as placement options for the final portion of the offenders' prison terms.'" (Resp. at 23 (quoting 70 Fed. Reg. at 1660).) The BOP concluded that "'[b]y ensuring that offenders sentenced to prison terms not be placed in CCCs except during the last ten percent of their prison sentences (not to exceed six months), the new rule will help ensure that CCCs remain available

18

to serve the purposes for which their resources make them best suited." Moreover, the respondent contends that to facilitate an inmate's transition into the community, the 2005 Rules expressly require consideration of an inmate's sentence length when determining the timing of CCC placement. (Id.) In the rulemaking decision, the BOP also considered relevant policy statements made by the Sentencing Committee, as well as the statutory mandate that prisoners of high social or economic status receive no favoritism. (Id. at 24.) Finally, the respondent asserts that under the 2005 Rules, the BOP continues to consider the § 3621(b) factors when making its placement decisions. (Id.)

Finally, the respondent contends that the 2005 Rules do not violate the Ex Post Facto Clause because they are not impermissibly retroactive, nor do they increase the punishment for the petitioner's crime. This Court agrees that the 2005 Rules do not attach new legal consequences for the petitioner to events completed before the 2005 Rules were adopted and therefore they do not apply to him retroactively. Nor do the 2005 Rules increase the punishment for the petitioner's crime. Thus, the petitioner cannot state an ex post facto claim, and this Court will not consider such claim further in this order.

3.  Pertinent Case Law

The United States Court of Appeals for the Third Circuit Court, the first federal appellate court to address the issue raised in this case, recognized the split among the lower courts

regarding the validity of the BOP's 2005 Rules.  See <u>Woodall v.</u>
<u>Federal Bureau of Prisons</u>, 432 F.3d 235, 244 (3d Cir. 2005)
(collecting cases).  After analyzing the conflicting opinions, the
Third Circuit held the 2005 Rules invalid.  <u>Id.</u> Specifically, the
Third Circuit found that the governing statute, 18 U.S.C.
§ 3621(b), requires the BOP to consider five specific factors when
making placement and transfer decisions.  <u>Id.</u> at 237.  Because the
2005 Rules "categorically limit the amount of time an inmate may be
placed in a Community Corrections Center ('CCC'), [they] do not
allow the BOP to consider these factors in full."  <u>Id.</u>  The court
concluded that:

> [t]he regulations do not allow the BOP to consider the
> nature and circumstances of an inmate's offense, his or
> her history and pertinent characteristics, or most
> importantly, any statement by the sentencing court
> concerning a placement recommendation and the purposes
> for the sentence.  And yet, according to the text and
> history of § 3621, these factors must be taken into
> account.  The regulations are invalid because the BOP may
> not categorically remove its ability to consider the
> explicit factors set forth by Congress in § 3621(b) for
> making placement and transfer determinations.

<u>Id.</u> at 244.

In reaching this conclusion, the Third Circuit rejected the
same arguments that the respondent makes in this case.

Similarly, three other United States Courts of Appeals have
addressed this issue and reached similar conclusions.  See
<u>Wedelstedt v. Wiley</u>, 477 F.3d 1160 (10th Cir. 2007); <u>Levine v.</u>
<u>Apker</u>, 455 F.3d 71, 85-87 (2d Cir. 2006); <u>Fults v. Sanders</u>, 442
F.3d 1088, 1092 (8th Cir. 2006).  Although none of the circuit

court opinions was unanimous, and in fact, there were strong dissents in each case,[8] the clear weight of authority at this time suggests that the regulations are invalid. Upon a review of those cases, including the dissenting opinions, this Court is persuaded that the regulations are invalid for the reasons set forth in Woodall, Fults, Levine and Wedelstedt.

4. Discussion

The language of § 3621 clearly requires the BOP to consider all of the five enumerated factors in making placement and transfer decisions. The 2005 Rules allow the BOP to make placement and transfer determinations without considering three of the § 3621

---

[8]See Wedelstedt, 477 F.3d at 1169-71 (Hartz, Circuit Judge, dissenting) (agreeing that § 3621 requires the BOP to consider each of the five enumerated factors, but finding that the BOP properly performed such duty when it reasonably considered each of the five factors in promulgating its general rule); Levine, 455 F.3d at 87-91 (Raggi, Circuit Judge, dissenting) (construing the rule as "a permissible categorical rejection of CCCs as appropriate and suitable facilities for § 3621(b) designations generally" with limited statutorily identified exceptions including "those catalogued in § 3621(b)," finding the rule comports with § 3624(c)'s express time limitations, and finding Lopez supports the Bureau's "categorical rejection of CCCs for general § 3621(b) designations (i.e., placements not involving § 3624(c) or other statutory concerns)"); Fults, 442 F.3d at 1093 (Riley, Circuit Judge, dissenting) (finding that the "BOP's categorical rules governing transfer of inmates to CCCs, and implementing section 3624(b), do not conflict with the factors enumerated in section 3621(b)"); Woodall, 432 F.3d at 251-52 (Fuentes, Circuit Judge, dissenting) (agreeing that § 3621(b) requires the BOP to consider each of the five enumerated factors listed in the statute, but finding that the BOP is not required to consider the factors until the inmate is actually considered for transfer and that such consideration is not required "until the lesser of six months or ten percent of the inmate's sentence remains").

factors, which vary by individual inmate.[9]  Those factors include the nature and circumstances of the offense; the history and characteristics of the prisoner; and any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted, or recommending a type of penal or correctional facility as appropriate.[10]  <u>See</u> 18 U.S.C. § 3621(b)(2)-(4).  Accordingly, this Court need not proceed past the first step of the <u>Chevron</u> analysis. Even if analysis of the second step of <u>Chevron</u> were required, the BOP's interpretation is contrary to the statute and is therefore not entitled to deference.

Moreover, this Court finds that petitioner's reliance on <u>Lopez v. Davis</u>, <u>supra</u>, is misplaced.  At issue in <u>Lopez</u> was the constitutionality of a BOP rule excluding certain inmates from early release under 18 U.S.C. § 3621(e)(2)(B).  <u>Lopez</u>, 531 U.S. at 243-44.  Section 3621(e)(2)(B) grants the BOP discretion to reduce the term of confinement of inmates who have been convicted of a "non-violent" offense and who have successfully completed a substance abuse program.  <u>Id.</u> at 232.  The statute does not define the term "non-violent" offense; to resolve the ambiguity of the

---

[9]Accordingly, this Court need not go past the first step of the <u>Chevron</u> analysis.  Even if proceeding to the second step of <u>Chevron</u> were required, the BOP's interpretation is contrary to the statute and is not entitled to deference.

[10]Nor could these factors have been considered when the BOP implemented its 2005 Rules because each of these factors can be considered only by examining the history and circumstances of the individual prisoner.

term's meaning, the BOP adopted a rule categorically denying early release to prisoners convicted of a felony involving "the carrying, possession, or use of a firearm." Id. The Lopez court upheld this exercise of the BOP's rulemaking authority because, while the statute does not define the term "nonviolent offense," it does give the BOP the discretion to determine which inmates may participate in the BOP's pre-release programs. Id. 235-238. Concluding that the statute gives the BOP discretion to define the term "non-violent" offense, the Court upheld the BOP's rule excluding certain categories of inmates from early release programs based on the BOP's own definition of "non-violent" offense. Id. The Court's decision was clearly grounded in the discretion afforded the BOP under the statute and in the ambiguity resulting from Congressional silence concerning what constitutes a nonviolent offense. These factors are not at play in this case. Although § 3621(b) does give the BOP some discretion in determining the place of an inmate's confinement, the statute requires the BOP to consider each of the five factors before making placement and transfer determinations. The statutory language concerning these factors contains no ambiguity requiring or permitting the BOP's resolution.

In addition, Lopez is also inapplicable to the issues in this case because § 3621(e)(2)(B), the statutory provision the Supreme Court construed in Lopez, does not require the BOP to make individualized determinations, as does § 3621(b). This Court notes that the mere presence of individualized factors in the statute

does not in itself require a different conclusion in this case from that in <u>Lopez</u>. Indeed, the <u>Lopez</u> Court stated that "[e]ven if a statutory scheme requires individualized determinations . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." <u>Lopez</u>, 531 U.S. 243-44 (internal quotations omitted). Sentencing recommendations and the history and characteristics of the prisoner are not, however, "issues of general applicability". They are highly particularized to the circumstances of each individual prisoner. Moreover, Congress does "appear to express an intent to withhold from the BOP the authority to make CCC placements without the guidance of the statutory factors." <u>Woodall</u>, 432 F.3d at 247.

Although this Court agrees with the four Courts of Appeals that have decided the issue and believes the petitioner's petition for writ of habeas corpus should be granted, such decision does not entitle the petitioner to an order from this Court directing that he be immediately transferred to a CCC. This Court has determined that the BOP's regulations are invalid only to the extent that the BOP has failed to consider the five factors set forth in 18 U.S.C. § 3621(b) in its determination to limit the petitioner's placement in a CCC to the lesser of ten percent or six months of his sentence.

## VI.   Conclusion

Based on the foregoing, it is the opinion of this Court that the petitioner's § 2241 petition (Doc. No. 1) should be, and is hereby GRANTED as framed above, and the Bureau of Prisons is directed to consider this petitioner, Martin Jaworski, for CCC placement in accordance with the five factors set forth in § 3621(b).   In addition, the petitioner's motion for court ruling (Doc. No. 11) is DENIED AS MOOT.

It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.   Pursuant to Federal Rules of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:   August 23, 2007


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE